

**SIGNED this 05th day of May, 2014.**

CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | § | |
|---|---|---|
| IN RE: | § | CASE NO. 13-52402-CAG |
| | § | |
| GENE R. ROSAS, | § | |
| | § | CHAPTER 13 |
| Debtor. | § | |

| | § | |
|---|---|---|
| GENE R. ROSAS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 13-05080-CAG |
| | § | |
| AMERICA'S SERVICING COMPANY | § | |
| AND DEUTSCHE BANK NATIONAL | § | |
| TRUST COMPANY AS TRUSTEE | § | |
| FOR THE FREMONT HOME LOAN | § | |
| TRUST SERIES 2006-3 | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Came on for consideration the above-numbered adversary proceeding and, in particular,

Defendants' Motion for Summary Judgment (ECF No. 8[1]) and Plaintiff's Cross Motion for Summary Judgment (ECF No. 21).  This Court conducted a hearing on both parties' summary judgment motions on March 6, 2014, before taking the matter under advisement.  After considering the pleadings and the arguments of counsel, the Court finds that Defendants' Motion for Summary Judgment should be granted because the applicable statutes of limitations to enforce the lien and Note have not expired due to the parties' abandonment of acceleration in 2010.  Therefore, the Court also finds that Plaintiff's Cross-Motion for Summary Judgment should be denied on the same basis.

As an initial matter, the Court finds that it has jurisdiction over this proceeding under 28 U.S.C. §§ 157(b) and 1334 (2012).  This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (K), in which the Court may enter a final order.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This matter is referred to the Court pursuant to the District's Standing Order of Reference.

<u>PROCEDURAL BACKGROUND AND UNDISPUTED MATERIAL FACTS</u>

Plaintiff is Gene R. Rosas, debtor in the underlying Chapter 13 bankruptcy case ("Plaintiff").  Defendants are America's Servicing Company and Deutsche Bank National Trust Company as Trustee for the Fremont Home Loan Trust Series 2006-3, the servicer and holder, respectively, of the mortgage which is the subject of this dispute.  This dispute arises from non-payment by Plaintiff of a mortgage on his residence owed to Defendants.  The material facts of this case are undisputed.  On June 23, 2006, Plaintiff executed an Adjustable Rate Note ("Note") with Fremont Investment & Loan for the amount of $275,000.00,  (Defendants' MSJ Ex. A-1[2];

---

[1] Unless otherwise noted, all references to "ECF" herein refer to documents filed in Adversary Case No. 13-05080-cag.
[2] Unless otherwise noted, all references to "Defendants' MSJ Ex." herein refer to exhibits provided with Defendants' Motion for Summary Judgment (ECF No. 8).

Plaintiff's MSJ Ex. A-2[3]), which is secured by a Deed of Trust also executed by Plaintiff on that same date.  (Defendants' MSJ Ex. A-2; Plaintiff's MSJ Ex. A-3).  The collateral subject property secured under the Deed of Trust is located at 6706 Berg Boulevard, San Antonio, Texas 78256 (the "Property") and is described as:

> LOT 2, BLOCK 3, NEW CITY BLOCK 347425A, WALDEN HEIGHTS, UNIT 2, SITUATED IN BEXAR COUNTY, TEXAS, ACCOUNTING TO PLAT THEREOF RECORDED IN VOLUME 9505, PAGE 168, DEED  AND PLAT RECORD OF BEXAR COUNTY, TEXAS.

Thereafter, Plaintiff and Defendants have been engaged in a long string of state court litigation, negotiations and bankruptcy filings spanning from 2007 to the present bankruptcy case.

On August 6, 2007, Defendants sent Plaintiff a notice of default and intent to accelerate the Note if a delinquency of $15,409.17 was not cured by September 5, 2007 (the "First Notice of Intent to Accelerate").  (Defendants' MSJ Ex. A-4; Plaintiff's Resp. Ex. 3[4]; Plaintiff's MSJ Ex. A-4).  On September 24, 2007, Defendants recorded a Notice of Substitute Trustee Sale and posted the Property for foreclosure sale scheduled to be held on November 6, 2007 ("First Scheduled Foreclosure Sale").  (Plaintiff's Resp. Exs. 2 and 17; Plaintiff's MSJ Ex. A-5).  The Property was not foreclosed upon, however, because, on November 5, 2007, the day before the First Scheduled Foreclosure Sale, Plaintiff filed his Original Application for Temporary Restraining Order and Application for Injunction under Cause No. 2007-CI-16691 in the 150th Judicial District Court of Bexar County, Texas ("First Lawsuit").  On that same day, the state court judge entered an Order Granting Temporary Restraining Order which halted the First Scheduled Foreclosure Sale.  On November 19, 2007, Plaintiff filed a Notice of Non-Suit in the First Lawsuit.  (Defendants' MSJ Exs. E-1 and E-15; Plaintiff's Resp. Exs. 9 and 14; Plaintiff's

---

[3] Unless otherwise noted, all references to "Plaintiff's MSJ Ex." herein refer to exhibits provided with Plaintiff's Cross Motion for Summary Judgment (ECF No. 21).
[4] Unless otherwise noted, all references to "Plaintiff's Resp. Ex." herein refer to exhibits provided with Plaintiff's Response to Defendants' Motion for Summary Judgment (ECF No. 14).

MSJ Ex. C).

On January 11, 2008, Defendants sent Plaintiff a Notice of Acceleration of the maturity date of the debt ("First Notice of Acceleration") and Notice of Substitute Trustee's Sale scheduled for February 5, 2008 ("Second Scheduled Foreclosure Sale"). (Plaintiff's Resp. Exs. 4 and 17; Plaintiff's MSJ Exs. 6-7). The Property, was not foreclosed upon, however, for a second time because on February 4, 2008, the day before the Second Scheduled Foreclosure Sale, Plaintiff's wife, Michelle L. Rosas, filed an Original Application for Temporary Restraining Order and Application for Injunction under Cause No. 2008-CI-01683 in the 45th Judicial District Court of Bexar County, Texas ("Second Lawsuit"). Plaintiff filed this Second Lawsuit on behalf of his wife and signed the pleading as her attorney. On the same day, the state court judge entered an Order Granting Temporary Restraining Order which halted the Second Scheduled Foreclosure Sale. On February 25, 2008, the Parties signed and submitted a Rule 11 Agreement in the Second Lawsuit wherein Plaintiff's wife agreed to dismiss the suit with prejudice. Additionally, the Parties agreed: (1) that the loan remained accelerated; (2) that the loan would proceed to Foreclosure Sale on April 1, 2008, absent reinstatement or payoff of the debt; and (3) that Defendants' attorney must be notified before any future restraining relief was sought. The state court also entered an Agreed Order of Dismissal with Prejudice in the Second Lawsuit. (Defendants' MSJ Exs. E-2, E-3, and E-16; Plaintiff's Resp. Ex. 8; Plaintiff's MSJ Ex. C).

The Property was not foreclosed upon on April 1, 2008. Rather, on March 31, 2008, Plaintiff filed another Original Application for Temporary Restraining Order and Application for Injunction under Cause No. 2008-CI-05134 in the 285th Judicial District Court of Bexar County, Texas ("Third Lawsuit"). On that same day, the state court judge signed another Order Granting

4

Temporary Restraining Order.  On June 6, 2008, the state court entered another Agreed Order of Dismissal with Prejudice in the Third Lawsuit.  (Defendants' MSJ Exs. E-4 and E-17; Plaintiff's Resp. Ex. 14; Plaintiff's MSJ Ex. C).

On May 16, 2008, Defendants sent Plaintiff another Notice of Acceleration of the maturity date of the debt ("Second Notice of Acceleration") and Notice of Substitute Trustee's Sale scheduled for July 1, 2008 ("Third Scheduled Foreclosure Sale").  (Plaintiff's Resp. Ex. 17).  Again, the Property was not foreclosed upon on July 1, 2008, because on the same day, Plaintiff filed another Original Application for Temporary Restraining Order and Application for Injunction under Cause No. 2008-CI-10254 in the 407th Judicial District Court of Bexar County, Texas ("Fourth Lawsuit").   On that same day, the state court judge entered another Order Granting Temporary Restraining Order which halted the Third Scheduled Foreclosure Sale.  Defendants filed an answer, counterclaim and motion for sanctions on July 3, 2008.  On July 14, 2008, the state court judge denied Plaintiff's Request for a Temporary Injunction.  (Defendants' MSJ Exs. E-5 and E-18; Plaintiff's Resp. Ex. 14; Plaintiff's MSJ Ex. C).

While the Fourth Lawsuit remained pending but after the state court judge denied injunctive relief, on November 3, 2008, Plaintiff also filed a Chapter 13 bankruptcy petition under Case No. 08-53304-lmc in the United States Bankruptcy Court for the Western District of Texas ("First Bankruptcy Case").  The filing of the bankruptcy petition automatically stayed any action from going forward in the Fourth Lawsuit.  The Chapter 13 Trustee summarily dismissed the First Bankruptcy Case on December 17, 2008.  (Defendants' MSJ Ex. E-6; Plaintiff's MSJ Ex. B).

Upon dismissal of the First Bankruptcy Case, proceedings in the Fourth Lawsuit resumed and on January 22, 2009, the Parties signed and submitted a Rule 11 Agreement in the Fourth

Lawsuit. The state court judge signed the Rule 11 Agreement wherein Plaintiff acknowledged that he had "filed a total of six separate lawsuits to stop the foreclosure of the subject property; of which, two of the prior lawsuits were dismissed with prejudice," and agreed that "no further legal action will be taken by them [Plaintiff and his wife], their agents, or assigns or anyone on their behalf to obtain another TRO or to otherwise thwart or restrain [Defendants] . . . from foreclosing against the subject property." Additionally, the Parties agreed: (1) that the loan remained accelerated; (2) that the loan would proceed to Foreclosure Sale on March 3, 2009, absent reinstatement or payoff of the debt; and (3) that Defendants' would reconsider the borrowers for loan workout assistance if the borrowers provided the required paperwork to Defendants by January 31, 2009. (Defendants' MSJ Ex. 7). On January 19, 2009, the state court entered an Agreed Judgment and Order Granting Defendants' Motion for Sanctions and To Strike Pleadings which dismissed the Fourth Lawsuit with prejudice to refiling and barred Plaintiff or his wife from seeking further injunctive relief to stop the foreclosure sale against the subject property. (Defendants' Ex. E-8).

On January 2, 2009, Defendants again sent Plaintiff a Notice of Acceleration of the maturity date of the debt ("Third Notice of Acceleration") and Notice of Substitute Trustee's Sale scheduled for February 3, 2009 ("Fourth Scheduled Foreclosure Sale"). (Plaintiff's Resp. Ex. 17). However, for reasons not provided in the record, the Fourth Scheduled Foreclosure Sale did not take place. Thereafter, on March 11, 2009, Defendants sent Plaintiff another Notice of Acceleration of the maturity date of the debt ("Fourth Notice of Acceleration") and Notice of Substitute Trustee's Sale scheduled for May 5, 2009 ("Fifth Scheduled Foreclosure Sale"). (Plaintiff's Resp. Ex. 17).

Again, the Property was not sold at the Fifth Scheduled Foreclosure Sale but rather, on

May 4, 2009, the day before the Fifth Scheduled Foreclosure Sale, Plaintiff filed another Chapter 13 bankruptcy petition under Case No. 09-51676-lmc in the United States Bankruptcy Court for the Western District of Texas ("Second Bankruptcy Case") which halted the sale. The Chapter 13 Trustee summarily dismissed the Second Bankruptcy Case on July 13, 2009. (Defendants' MSJ Ex. E-9; Plaintiff's MSJ Ex. B).

On August 5, 2009, Defendants sent Plaintiff another Notice of Acceleration of the maturity date of the debt ("Fifth Notice of Acceleration") and Notice of Substitute Trustee Sale scheduled for September 1, 2009 ("Sixth Scheduled Foreclosure Sale"). (Plaintiff's Resp. Ex. 17). This time, however, the Sixth Scheduled Foreclosure Sale did not occur because Plaintiff's wife filed a Chapter 13 bankruptcy petition on September 1, 2009 under Case No. 09-53410-lmc in the United States Bankruptcy Court for the Western District of Texas ("Third Bankruptcy Case") which halted the Sixth Scheduled Foreclosure Sale. The Chapter 13 Trustee summarily dismissed the Third Bankruptcy Case on October 19, 2009, for failure to file documents. (Defendants' MSJ Ex. E-10; Plaintiff's MSJ Ex. B).

Thereafter, Defendants sent Plaintiff three more Notices of Acceleration of the maturity date of the debt ("Sixth, Seventh and Eighth Notices of Acceleration") and Notices of Substitute Trustee's Sale scheduling sales for January 5, 2010, March 2, 2010, and May 4, 2010, respectively ("Seventh, Eighth and Ninth Scheduled Foreclosure Sales"). (Plaintiff's Resp. Ex. 17). None of these scheduled foreclosure sales took place.

Rather, on May 20, 2010, Defendant sent Plaintiff a Special Forbearance Agreement which Plaintiff signed on June 2, 2010. The Agreement stated the following: (1) that the loan was currently due for 38 months; (2) Plaintiff agreed to pay certain seven separate payments by specific due dates in consideration for Defendants' forbearance for a period of time; and (3) that

Plaintiff could seek a loan modification during this time to help resolve financial hardship. (Defendants' MSJ Ex. A-5). The first payment required to be made on June 15, 2010, was rejected for insufficient funds and the summary judgment record reflects some confusion regarding whether that rejection was correct or, as Plaintiff avers, there was a discrepancy in the amount written on the check. (Defendants' MSJ Ex. D, pg. 148-149). Regardless, at that point, Defendants considered the Special Forbearance Agreement to have been breached. On June 22, 2010, Defendants sent Plaintiff a Monthly Mortgage Statement reflecting that total payment of $114,889.42 (which includes overdue payment, current monthly charges and unpaid late charges) was due on July 1, 2010. This amount is less than the stated Unpaid Principal Balance of $273,807.00. (Defendants' MSJ Ex. C).

On July 6, 2010, Plaintiff's wife filed another Chapter 13 bankruptcy petition under Case No. 10-52571-lmc in the United States Bankruptcy Court for the Western District of Texas ("Fourth Bankruptcy Case") which she voluntarily dismissed on August 30, 2010. (Defendants' MSJ Ex. E-11; Plaintiff's MSJ Ex. B). In the interim, on July 7, 2010, Defendants sent Plaintiff a notice of default and intent to accelerate the Note (the "Second Notice of Intent to Accelerate"). (Plaintiff's Resp. Ex. 17).

On September 2, 2010, Plaintiff resumed making payments under the Special Forbearance Agreement. Plaintiff tendered and Defendants accepted payments on September 2, 2010; October 1, 2010; November 1, 2010; December 1, 2010; January 1, 2011; and January 5, 2011. (Defendants' MSJ Exs. A, A-3, C, and D). During this time, Defendants also sent Plaintiff several Monthly Mortgage Statements which stated amounts due that were less than the Outstanding Principal Balance of the debt. These Monthly Mortgage Statements were sent to Plaintiff on September 3, 2010; November 2, 2010; and January 4, 2011. (Defendants' MSJ Ex.

C).  Thereafter, between March 14, 2011 and December 29, 2011, Plaintiff submitted a number of loan modification applications and accompanying paperwork.  (Defendants' MSJ Exs. A, A-5 and A-6;  Plaintiff's Resp. Ex. 20).   While the loan modification process was engaged, Defendants sent Plaintiff and his wife a Notice of Rescission of Acceleration of Loan Maturity dated May 4, 2011 which stated that Defendants "hereby rescind[] the notice of acceleration dated 4/12/10 and all prior notices of acceleration."   (Defendants' MSJ Exs. B-1 and C; Plaintiff's Resp. Ex. 12).

Ultimately, it appears the Defendants could not complete a loan modification to the Plaintiff and on January 13, 2012, Defendants sent Plaintiff a Notice of Default and Intent to Accelerate the Note (the "Third Notice of Intent to Accelerate").  (Defendants' MSJ Ex. D; Plaintiff's Resp. Ex. 21).  Thereafter, on February 13, 2012, Defendants sent Plaintiff a Notice of Acceleration of the maturity date of the debt ("Ninth Notice of Acceleration") and Notice of Substitute Trustee's Sale scheduled for March 6, 2012 ("Tenth Scheduled Foreclosure Sale"). (Plaintiff's Resp. Ex. 22).

On February 24, 2012, Plaintiff filed another state court lawsuit under Cause No. 2012-CI-02987 in the 131st Judicial District Court of Bexar County, Texas ("Fifth Lawsuit") asserting identical arguments to those made in this adversary proceeding.   On August 31, 2012, Defendants removed the case to United States District Court for the Western District of Texas and it was assigned Case No. 5:12-cv-00819-FB.  (Defendants' MSJ Ex. E-12).  On August 29, 2013, Judge Biery denied Plaintiff's request for a temporary restraining order to halt the Eleventh Scheduled Foreclosure Sale holding that Plaintiff failed to show a substantial likelihood of success on the merits based on the statute of limitations.  (Defendants' MSJ Ex. E-14).  On August 8, 2013, Defendants sent Plaintiff a Notice of Acceleration of the maturity date of the

debt ("Tenth Notice of Acceleration") and Notice of Substitute Trustee's Sale scheduled for September 3, 2013 ("Eleventh Scheduled Foreclosure Sale"). (Plaintiff's Resp. Ex. 23). The Eleventh Scheduled Foreclosure Sale did not take place, however, because on September 2, 2013, the day before the Eleventh Scheduled Foreclosure Sale, Plaintiff filed his current Chapter 13 bankruptcy petition which halted the sale. Judge Biery entered an Order of Stay in the Fifth Lawsuit on September 9, 2013, due to the current bankruptcy filing. (Defendants' MSJ Ex. 13).

On October 2, 2013, Plaintiff filed his Original Complaint to Determine the Extent and Validity of Lien, To Quiet Title, For Equitable Damages, For Attorney's Fees and Costs, and For Declaratory Judgment (ECF No. 1). In his Complaint, Plaintiff alleges that the statute of limitations for enforcing a lien on real property has expired under Texas Civil Practice and Remedies Code § 16.035. Additionally, Plaintiff alleges that the statute of limitations for enforcement and collection of the Note has expired under Texas Business and Commerce Code § 3.118. As such, Plaintiff seeks a declaratory judgment quieting title to the Property by removing the lien created by the Deed of Trust and barring enforcement of the Note.

Defendants filed their Original Answer on November 1, 2013 (ECF No. 5). Defendants then filed their Motion for Summary Judgment (ECF No. 8) on December 11, 2013, and Plaintiff filed his Response to Defendants' Motion for Summary Judgment on January 9, 2014 (ECF No. 14). Plaintiff also filed his own Cross Motion for Summary Judgment (ECF No. 21) on January 15, 2014, to which Defendants filed their Response to Plaintiff's Cross Motion for Summary Judgment (ECF No. 28) on January 23, 2014. On January 30, 2014, Plaintiff filed his Reply to Defendants' Response to Plaintiff's Cross Motion for Summary Judgment (ECF No. 34). This Court conducted a hearing on both parties' summary judgment motions on March 6, 2014, before taking the matter under advisement.

**OVERVIEW OF PARTIES' CONTENTIONS**

**I.    Defendants' Summary Judgment Motion**

Defendants urge summary judgment in their favor on two bases – first, that the lien and Note remain valid and enforceable and second, that Plaintiff is precluded from asserting his limitations claim by the doctrine of promissory estoppel.    Further, Defendants raise the affirmative defense of fraud to prevent the running of limitations in their Response to Plaintiff's Cross Motion for Summary Judgment.

A.    Validity and Enforceability of the Lien and Note

Defendants argue that the lien and Note are still valid and enforceable because the applicable statutes of limitations have not expired.  First, Defendants assert that acceleration of the loan maturity date did not occur in 2007.  Second, Defendants argue that, even assuming acceleration did occur in 2007, such acceleration was waived or abandoned by any or all of the following actions: (1) entering into the 2010 Special Forbearance Agreement with Plaintiff; (2) accepting payments in connection with the loan in 2010; (3) representing to Plaintiff in 2010 and early 2011 that he did not owe the entire unpaid loan balance immediately; and (4) expressly rescinding all prior accelerations by sending a "Rescission of Accelerated Loan Maturity" to Plaintiff in 2011.  Third, Defendants argue that the applicable statutes of limitations were repeatedly tolled by Plaintiff's numerous bankruptcy filings and state court litigation.

B.    Affirmative Defenses of Promissory Estoppel and Fraud

Defendants also argue that the doctrines of promissory estoppel and fraud preclude Plaintiff from invalidating the lien and Note.  Defendants posit that Plaintiff's concurrence with numerous Rule 11 Agreements and Agreed Judgments in state court litigation as well as knowing, fraudulent representations in his loan modification applications prevent him from

invalidating the lien and Note on an equitable basis. Defendants argue that they reasonably and substantially relied on these representations to their own substantial and definite injury because Defendants risked invalidation of their lien and Note each time they elected not to proceed to foreclosure. Therefore, Defendants urge that injustice may only be avoided by enforcing Plaintiff's promises and preventing him from benefitting from his litigation tactics and misrepresentations by receiving a free house.

**II.**     **<u>Plaintiff's Response and Cross Motion for Summary Judgment</u>**

In response to Defendants' Motion for Summary Judgment, Plaintiff argues that Defendant is not entitled to summary judgment because (1) the statute of limitations has expired on both validity of the lien and enforceability of the Note; and (2) Defendants may not prevail on a claim of promissory estoppel against Plaintiff because Defendants did not detrimentally rely on any of his promises or agreements. Additionally, Plaintiff moved for summary judgment in his favor by relying on his argument that the applicable limitation periods have expired to enforce the lien or the Note – even accounting for the amount of time tolled by his numerous bankruptcy filing and state court litigation.

    A.     <u>Validity and Enforceability of the Lien and Note</u>

First, Plaintiff argues that Defendants accelerated the loan in 2007 by recording the Notice of Substitute Trustee's Sale scheduling the First Scheduled Foreclosure Sale. Second, Plaintiff argues that, even if the loan was not accelerated until 2008, the limitations have still expired on the enforceability of the lien. Third, Plaintiff contends that Defendants did not effectively abandon acceleration of the loan at any time because: (1) the Forbearance Agreement was conditional and does not reflect an express intent or stipulation to rescind acceleration; (2) the Forbearance Agreement does not comply with the Statute of Frauds; and (3) Defendants

12

could not unilaterally abandon acceleration through the 2011 Notice of Rescission because Plaintiff had already detrimentally relied on the acceleration.  Plaintiff urges that unilateral rescission only served to deprive Plaintiff of his statute of limitations defense but did not include any consideration from Defendants, such as reinstatement of the Note.  Further, Plaintiff agrees that the applicable statutes of limitations are tolled by his state court and bankruptcy filings but argues that – even accounting for tolling – those limitations have expired.

B.      Affirmative Defenses of Promissory Estoppel and Fraud

With regards to Defendants' affirmative defenses of promissory estoppel and fraud committed by Plaintiff, Plaintiff argues that Defendants were never induced to change their position for the worse because they continued to attempt foreclosure.  Rather, Plaintiff alleges that he was attempting to resolve the default but that Defendants' continued attempts at foreclosure required him to repeatedly file state court litigation and bankruptcy in an attempt to stall any sale – regardless of the Rule 11 Agreements or Agreed Judgments he entered into.  Additionally, Plaintiff argues that Defendants were fully aware of Plaintiff's disbarment at the time he submitted the loan modification documents and therefore, Defendants could not have reasonably relied on his misrepresentations.

## ANALYSIS

The parties have raised three separate issues for the Court to consider on summary judgment: (1) whether the statutes of limitations have expired on Defendants' ability to enforce the Note and lien created by the Deed of Trust; (2) whether Plaintiff is barred from asserting his limitations defense on the basis of promissory estoppel; and (3) whether Plaintiff is barred from asserting his limitations defense on the basis of fraud.  Should Defendants prevail on any one of these issues, summary judgment must be granted in favor of Defendants and conversely, Plaintiff

13

must prevail on all three issues in order to prevail on summary judgment. The Court finds that Defendants are entitled to summary judgment on the issue of abandonment and holds that acceleration was abandoned by the parties on June 2, 2010. As such, Defendants are entitled to enforce the lien and Note because the statutes of limitations have not expired. Because the Court finds that Defendants are entitled to summary judgment on the basis of abandonment, the Court will not address Defendants' arguments regarding promissory estoppel and fraud.

## I.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of sufficient quality so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply

show that there is some metaphysical doubt as to material facts"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007). In determining whether a genuine issue of material fact exists, the nonmoving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. *Leon Chocron Publcidad Y Editoria, S.A. v. Jymm Swaggart Ministries*, 990 F.2d 1253 (5th Cir. 1993).

II.     **Statute of Limitations**

Plaintiff bases the whole of his Cross Motion for Summary Judgment on the argument that the applicable four and six-year statutes of limitations to (1) enforce the lien on real property, and (2) enforce collection on the Note, have expired. In response, Defendants argue in their Motion for Summary Judgment that neither of the limitation periods have expired because the parties abandoned any acceleration of the debt before expiration of the applicable limitations period.

Section 16.035 of the Texas Civil Practice and Remedies Code[5] provides the statute of limitations for enforcement of a lien in certain scenarios, stating:

> (a) A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.
>
> (b) A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

---

[5] Unless otherwise note, "§ 16.035" shall refer to Texas Civil Practice and Remedies Code § 16.035.

15

(c) The running of the statute of limitations is not suspended against a bona fide purchase for value, a lienholder, or a lessee who has no notice or knowledge of the suspension of the limitations period and who acquires an interest in the property when a cause of action on an outstanding real property lien has accrued for more than four years, except as provided by:

(1)  Section 16.062, providing for suspension in the event of death; or
(2)  Section 16.063, providing for recorded extensions of real property liens.

(d)  On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void.

(e)  If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation or installment.

(f)  The limitations period under this section is not affected by Section 3.118, Business & Commerce Code.

Tex. Civ. Prac. & Rem. Code § 16.035(a)-(f)(2013).  Thus, Texas state law provides a four-year

limitations period on enforcement of a real property lien once the cause of action has accrued.

Id.

Section 3.118(a) of the Texas Business and Commerce Code[6] provides the statute of

limitations to enforce the obligation of a party to pay on a note payable at a definite time, stating:

(a) Except as provided in Subsection E [relating to certificate of deposits], an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.

Tex. Bus. & Com. Code § 3.118(a)(2013).   Thus, Texas state law provides a six-year

limitations period on enforcement of the Note itself from the accelerated due date.

Under Texas law, default does not ipso facto start limitations running on a note or deed of

trust containing an optional acceleration clause.  ***Holy Cross Church of God in Christ v. Wolf***,

---

[6] Unless otherwise noted, "§ 3.118" shall refer to Texas Business and Commerce Code § 3.118.

44 S.W.3d 562, 566 (Tex. 2001) (citing *Hammann v. H.J. McMullen & Co.*, 62 S.W.2d 59, 61 (Tex. 1933) and *Curtis v. Speck*, 130 S.W.2d 348, 351 (Tex. Civ. App. – Galveston 1939, writ ref'd)).  Rather, the holder must actually exercise its option to accelerate in order for the cause of action to accrue.  *Id.*  Once acceleration has occurred, and thus, the cause of action accrued, limitations begin to run under both § 16.035 and § 3.188.

A default and accrual of the cause of action may be obviated at a later date if an abandonment of the previous acceleration occurs.  *Holy Cross*, 44 S.W.2d at 566-67 (citing *City Nat'l Bank v. Pope*, 260 S.W. 903, 905 (Tex. Civ. App. – San Antonio 1924, no writ); *San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 388 (Tex. 1901); *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App. – Tyler 1974, no writ)).  Additionally, in calculating whether the statute of limitations has expired, Texas law provides that such limitations are tolled where the pendency of legal proceedings prevent a person from exercising his legal remedy.  *Hughes v. Mahoney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991) (citations omitted).  Thus, the linchpin question the Court must determine is whether Defendants are entitled to summary judgment because they abandoned acceleration of the debt.[7]

A.     Abandonment of Acceleration

Defendants argue that the parties abandoned acceleration of the debt between May 20, 2010, and May 4, 2011, listing the following seven actions by the parties that qualify, individually or as a whole, as abandonment of acceleration:

1)     Forbearance Agreement executed May 20, 2010, by Plaintiff and Defendants

---

[7] The parties disagree on the initial date of accrual of the cause of action and therefore, the time at which limitations began to run.  Plaintiff asserts that the cause of action accrued on September 24, 2007 – the date Defendants filed the First Notice of Substitute Trustee's Sale.  Defendants argue that the cause of action accrued on January 11, 2008 – the date Defendants sent the First Notice of Acceleration.  Because the Court finds that acceleration was abandoned within four years of both dates, the Court need not determine on which date of the two the cause of action first accrued.

stating: "Currently, your loan is due for 38 installments, from April 01, 2007 through May 01, 2010." (Defendants' MSJ Ex. A-5).

2) Monthly Mortgage Statement dated June 22, 2010 stating that the loan is due for $114,889.42, which is less than the total amount due for the entire debt.

3) Tender and acceptance of payments in September, October, November, and December 2010, as well as January 2011[8], that were applied to the borrower's account.

4) Monthly Mortgage Statement dated September 3, 2010, stating that the loan is due for $111,234.78, which is less than the total amount due for the entire debt.

5) Monthly Mortgage Statement dated November 2, 2010, stating that the loan is due for $110,815.92, which is less than the total amount due for the entire debt.

6) Monthly Mortgage Statement dated January 4, 2011, stating that the loan is due for $111,385.92, which is less than the total amount due for the entire debt.

7) Written Rescission of Acceleration of Loan Maturity dated May 4, 2011, stating that Defendants "hereby rescind the notice of acceleration dated 4/12/2010 and all prior notices of acceleration." Defendants also reserved the right to accelerate the loan in the future.

In response, Plaintiff asserts that none of these actions indicate abandonment of acceleration because the lender's intentions in taking these actions were unclear. Rather, Plaintiff asserts that the Forbearance Agreement reflected "no intent or express stipulation of Defendants to waive their rights or undo what had already been done with respect to acceleration of the note in 2007." (See Plaintiff's Response, ECF No. 14). Additionally, Plaintiff asserts that the Forbearance Agreement is unenforceable because it fails to comply with the Statute of

---

[8] The January 2011 payment was not applied to borrower's account because it was returned for insufficient funds.

Frauds. Finally, Plaintiff argues that Defendants may not unilaterally abandon acceleration because Plaintiff detrimentally relied on such acceleration.

It is a well-established principal in Texas that acceleration can be abandoned by agreement or other action of the parties. *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App. – Houston [1st Dist.] 2012, no pet.); *Holy Cross*, 44 S.W.3d at 567 (citing *Stewart*, 61 S.W. at 388 (explaining that the parties' agreement or actions can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken")). "Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date." *Khan*, 371 S.W.3d at 353. There is no requirement in Texas that any agreement to abandon acceleration must be in writing or that it is subject to the Statute of Frauds. *Id.* at 356. Rather, because the parties may accomplish abandonment by their actions alone, no agreement in writing is necessary. *Id.* (citing *Stewart*, 61 S.W. at 388); *Santibanez v. Saxon Mortg. Inc.*, 2012 WL 3639814, at *2-3 (Tex. App. – Eastland Aug. 23, 2012, no pet.). Acceleration, however, may not be abandoned unilaterally where the borrower has detrimentally relied upon the acceleration. *Swoboda v. Wilshire Credit Corp.*, 975 S.W.2d 770, 776-77 (Tex. App. – Corpus Christi 1998, *reh'g denied, pet. denied*) *disapproved of on other grounds by* **Holy Cross**; *Callan v. Deutsche Bank Trust Co. Americas*, 2014 WL 1314831, at *5-6 (S.D. Tex. March 27, 2014). Courts have held, however, that abandonment may be demonstrated through the actions of the parties, even without express agreement from the borrower. *Clawson v. GMAC Mortg., LLC*, 2013 WL 1948128, at *4 (S.D. Tex. May 9, 2013) ("*Stewart* does not preclude a note holder from abandoning acceleration without express agreement from the borrower.") (citing *Holy Cross*, 44 S.W.3d at 566-67 (noting holder's ability to abandon acceleration by continuing to accept payments

19

without exacting available remedies); *Khan*, 371 S.W.3d at 356 ("[I]f an agreement abandoning acceleration had to be in writing, then the parties would not be able to do it by their actions alone, as *San Antonio Real-Estate* holds."); *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App. – Tyler 1974, no writ) (finding that a note holder abandoned acceleration when it took a non-suit on a counterclaim); *Santibanez*, 2012 WL 3639814 at*2).

Here, the Court agrees with Defendants and holds that, as a matter of law, the parties abandoned any acceleration prior to May 20, 2010, because: (1) the parties' actions in the Forbearance Agreement establish abandonment; (2) the parties' conduct in tendering and accepting payments in accordance with the Forbearance Agreement establish abandonment; and (3) the Monthly Mortgage Statements further establish an agreement to abandon acceleration on the part of Defendants.

First, the language of the Forbearance Agreement itself establishes that the parties abandoned acceleration. Defendants sent the Forbearance Agreement to Plaintiff on May 20, 2010, stating in both the cover letter and agreement: "Currently, your loan is due for 38 installments, from April 01, 2007 through May 01, 2010." Plaintiff signed the Forbearance Agreement on June 2, 2010, and provided a copy of the agreement as an exhibit on summary judgment. (Defendants' Resp. Ex. 5). Therefore, there was an agreement of the parties through the Forbearance Agreement acknowledging that the loan was currently due for 38 months. The effect of this acknowledgement by both parties is to abandon acceleration because, if the loan is no longer fully matured, it is no longer in a state of acceleration.

Plaintiff argues that the Forbearance Agreement also states; "The lender, at its option, may institute foreclosure proceedings according to the terms of the note and security instrument without regard to this agreement." The terms of the Note require acceleration of the debt in

order to institute foreclosure proceedings. Because the parties agreed that the loan was currently due for 38 months rather than the fully matured balance, any attempt at subsequent foreclosure according to the terms of the Note and Deed of Trust would have required a re-acceleration of the debt. The language on which Plaintiff relies does not serve to alleviate Defendants of the requirement to re-accelerate the Note if they chose to foreclose at a later date. Therefore, the undisputed and unambiguous language of the Forbearance Agreement itself establishes that acceleration was abandoned as a matter of law on June 2, 2010, by agreement of the parties.

Second, the parties' conduct in tendering and accepting payments in accordance with the Forbearance Agreement establishes abandonment of previous acceleration. Plaintiff does not dispute that payment was tendered and accepted from June 2010 through January 2011 in accordance with the Forbearance Agreement. (See Defendants' MSJ Ex. D, Deposition of Gene R. Rosas). Although there was some confusion regarding Plaintiff's first payment which resulted in Defendants sending the Second Notice of Intent to Accelerate on July 7, 2010, the discrepancy was resolved and Plaintiff resumed tendering payments from September 2010 through January 2011. (Id.). Defendants did not re-accelerate the debt and continued to forbear from seeking foreclosure during this period. Likewise, during this time that Plaintiff tendered payments in accordance with the Forbearance Agreement, Defendants continued to send Monthly Mortgage Statements to Plaintiff which stated that the current amount due was less than the fully matured balance. Plaintiff does not dispute that he received these Monthly Mortgage Statements or that he continued to tender payment to Defendants during this time.

Further, beginning at the time the Forbearance Agreement was executed on June 2, 2010, Defendants did not accelerate the debt nor post the Property for foreclosure until February 13, 2012 – over 20 months later. Rather, during this time, the parties agree that they were

21

communicating regarding possible loan modifications to resolve the remaining default. Considering the totality of these undisputed events involving the actions of both parties, no rational trier of fact could find that the parties did not abandon acceleration through the Forbearance Agreement and their subsequent actions.

Plaintiff's arguments that the parties must expressly stipulate to abandonment in writing and comply with the Statute of Frauds have no basis in Texas law.  Because parties may abandon acceleration through their actions alone, there is no requirement in Texas that any agreement to abandon acceleration must be in writing or that it is subject to the Statute of Frauds.  ***Khan***, 371 S.W.3d at 356.  Further, Plaintiff's arguments that he detrimentally relied on Defendants' acceleration of the debt have no merit because he willingly acquiesced in abandonment of the acceleration and, in fact, benefitted by such abandonment through his continued residence in the Property.  The Court, therefore, holds that previous acceleration of the debt was abandoned as a matter of law on June 2, 2010.

### B.   Subsequent Acceleration and Running of Limitations

On February 13, 2012, Defendants re-accelerated the Note and the statute of limitations began to run from that date forward.  Neither the four-year limitation of § 16.035 or the six-year limitation of § 3.118 have yet expired from the re-acceleration date.  For this reason, it is unnecessary for this Court to address any applicable tolling of limitations at this time.

Therefore, this Court may conclude as a matter of law that the statutes of limitation to enforce the lien or enforce collection on the Note have not expired and Defendants' claim is not time-barred.

### CONCLUSION

For these reasons, it is ORDERED that Defendants' Motion for Summary Judgment

(ECF No. 8) is GRANTED.

It is further ORDERED that Plaintiff's Cross Motion for Summary Judgment (ECF No. 21) is DENIED.

###